# Maria W. Hughes, Attorney at Law

405 Capitol Street, Suite Three  P.O. Box 11662•Charleston, West Virginia 25339
Phone: (304) 545-2061  •  Fax: (304) 205-7729  maria@wvemploymentrights.com
Web:www.wvemploymentrights.com

November 22, 2011

**VIA EMAIL: catkins@eqt.com**

Christopher Atkins, Human Resources
EQT Corporation
550 Eagan Street
Charleston, West Virginia

    Re:   Brenda Miller

Dear Mr. Atkins:

    As I informed you in our telephone conversation this morning, I have been retained to represent Brenda Miller. I am requesting that you please forward this letter to the attention of EQT's legal counsel.

    Brenda Miller was suspended from her employment with EQT last Tuesday, November 15, 2011, after she had complained to her supervisor, Chuck Heilmann about being sexually harassed by an outside contractor. Since the time that Ms. Miller complained, Mr. Heilmann has engaged in a pattern of unlawful retaliation against her, and now EQT has continued this unlawful retaliation with Ms. Miller's suspension without pay.

    At this time, Ms. Miller is requesting that she be reinstated to her position immediately with full back pay and that she be removed from working both with Mr. Heilmann and with the contractor involved, Jim Malfregoet. If EQT does not do so immediately, Ms. Miller will take legal action and seek all remedies available under the law.

    If you or legal counsel desires to discuss this matter further, you may contact me at (304) 545-2061. I am out of my office today for the Thanksgiving holiday but may be reached at that number.

                Sincerely,

                s/ Maria Hughes

                Maria W. Hughes



EXHIBIT 1

**From:** Maria Hughes [mailto:maria@wvemploymentrights.com]
**Sent:** Monday, December 05, 2011 1:43 PM
**To:** Frankhouser, Robert
**Subject:** Brenda Miller v. EQT

Robert,

Before filing legal action in this matter, I am writing in good faith to attempt to resolve Brenda Miller's legal claim under the West Virginia Wage Payment Collection Act.

Please note that the West Virginia Wage Payment Collection Act prohibits modification of the right to bring legal action by private agreement, such as an arbitration agreement. *See* W.Va. Code § 21-5-10 and *Ash v. Ravens Metals,* 437 S.E.2d 254 (1993).

EQT contends that it mailed Ms. Miller's final pay to her on November 22, 2011 via overnight delivery delivery for her anticipated receipt on Nov 23. Nevertheless, Ms. Miller does not reside at 406 Maple Avenue, and in fact, she notified EQT of her move several weeks ago. When EQT mailed her belongings to the 406 Maple Avenue address, the resident there notified her and brought her belongings to her. The resident did not ever receive the FedEx package; thus, neither Ms. Miller nor the resident refused delivery. The fact is that Ms. Miller did not receive her final pay within 72 hours. Thus, EQT did not meet its obligations under the WV Wage Payment Collection Act, and Ms. Miller is entitled to recover $14,535.12 in liquidated damages, along with her attorneys fees.

We request that a check in the amount of $14,535.12, along with $600.00 in attorneys fees, be forwarded to my attention no later than Monday, December 12, to avoid litigation on this claim. Should EQT not make prompt payment, attorneys fees will continue to accrue on such claim.

Sincerely,

Maria W Hughes


**MARIA W. HUGHES**
**Attorney at Law**
405 Capitol Street,
Mezzanine Level, Suite 3

12/9/2011

Charleston, WV 25301

MAILING ADDRESS:
Maria W. Hughes, Attorney at Law
P.O. Box 11662
Charleston, West Virginia 25339

(304) 400-4816 (office)
(304) 205-7729 (fax)
(304) 545-2061 (cell)
maria@wvemploymentrights.com

Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only for the use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.

---

This email has been scanned for all viruses by the MessageLabs Email Security System.

12/9/2011

**From:** Frankhouser, Robert
**Sent:** Tuesday, November 29, 2011 5:36 PM
**To:** 'maria@wvemploymentrights.com'
**Subject:** Brenda Miller

Maria,

As we discussed, I have attached a copy of Ms. Miller's Alternative Dispute Resolution Agreement and a copy of EQT's Alternative Dispute Resolution Program. As you can see, the ADR Agreement signed by Ms. Miller on August 17, 2010 is supported by adequate consideration and is a valid and enforceable contract. In addition, the ADR Program does not limit, in anyway, the remedies that would otherwise be available to Ms. Miller in federal or state court. As such, the ADR agreement is valid and enforceable and EQT will seek enforcement of the ADR Agreement as well as costs and any other available remedies if Ms. Miller breaches the ADR and files her lawsuit in federal or state court.

Turning to your claim that EQT did not pay your client within 72 hours of her termination. Ms. Miller's employment was terminated on November 21, 2011. Her final paycheck was sent via FedEx overnight mail to the address she has on file with EQT on November 22, 2011. FedEx attempted to deliver the package containing Ms. Miller's final paycheck on November 23, 2011. FedEx has informed EQT that the package was refused by the recipient at 2:11 pm on November 23, 2011. As such, EQT has met its obligations under the WV Wage Payment & Collection statute.

If you have any questions, please let me know.

Robert W. Frankhouser, Esq.
Senior Attorney, Employee & Labor Relations

EQT Corporation
EQT Plaza
625 Liberty Avenue, Suite 1700
Pittsburgh, Pa 15222

Phone: 412-553-5774
Fax: 412-553-5732

---

This email has been scanned for all viruses by the MessageLabs Email Security System.

12/9/2011

# SPILMAN THOMAS & BATTLE, PLLC
ATTORNEYS AT LAW

Kevin L. Carr
Direct: 304.340.3877
Email: kcarr@spilmanlaw.com

December 9, 2011

*Via E-Mail maria@wvemploymentrights.com and Regular U.S. Mail*
Maria W. Hughes, Esq.
PO Box 11662
Charleston, WV 25339

Re:   EQT – Brenda Miller

Dear Maria:

After our discussion, I investigated the facts underlying Ms. Miller's receipt of her final paycheck from EQT. I write to summarize the results of my investigation and to ask that you consider them when advising Ms. Miller on whether or not to pursue the wage payment claim you referenced during your prior conversations with Rob Frankhouser at EQT. To distill the issues, I believe that it is undisputed that Ms. Miller's employment with EQT terminated on November 21, 2011, and that EQT sent Ms. Miller the full amount of her last pay, by check, on November 22, 2011. EQT utilized Federal Express to deliver the paycheck overnight to Ms. Miller at 406 Maple Avenue. (See Federal Express Receipt, a copy of which is attached as Exhibit A.)

What apparently is disputed is whether or not Ms. Miller notified EQT that she changed her address before EQT overnighted her paycheck on November 22. I would hope that we could agree that if Ms. Miller did not notify EQT that she had changed her address prior to November 22, 2011, then EQT acted properly and in compliance with the West Virginia Wage Payment and Collection Act ("WVWPCA").

Succinctly, my investigation revealed that Ms. Miller did not notify EQT of her address change. First, there is a process for employees to record a change of address with EQT. The employee must download a form from EQT's employee benefits website. The employee must complete the form and return it to EQT via mail, e-mail or facsimile; the system does not accommodate "on-line" filing as Ms. Miller described.

Ms. Miller is familiar with this process as she utilized it in June of this year. When she moved into the 406 Maple Avenue address, Ms. Miller completed an "Address Card/Change of Address" form that she printed, completed and returned it via e-mail. (A copy of the form is attached as Exhibit B.) The process Ms. Miller utilized in June has not changed and it is, in a word, impossible for her to have submitted anything "on-line." And EQT has confirmed that Ms. Miller did not fax, mail or e-mail a change of address form indicating that she was moving from the 406 Maple Avenue residence.

Spilman Center | 300 Kanawha Boulevard, East | Post Office Box 273 | Charleston, West Virginia  25321-0273
www.spilmanlaw.com | 304.340.3800 | 304.340.3801 fax

**West Virginia**     North Carolina     Pennsylvania     Virginia

**SPILMAN THOMAS & BATTLE, PLLC**
ATTORNEYS AT LAW

Maria W. Hughes, Esq.
December 9, 2011
Page 2

  Moreover, Ms. Miller never told anyone at EQT – certainly not Deborah Paulin, the individual with whom Ms. Miller claims to have spoken – that she had moved from 406 Maple Avenue. And this despite the fact that Ms. Miller e-mailed Ms. Paulin several times in late October and November concerning a tax levy/lien on her property. (Copies of the e-mails are attached collectively as Exhibit C.) Not once during those e-mail communications did Ms. Miller state or indicate that she moved from 406 Maple Avenue. And no other e-mail sent by Ms. Miller to anyone (from June, 2011 to the date of her termination) indicated that she moved or that a change of address was necessary.

  Finally, EQT sent Ms. Miller's termination letter to the 406 Maple Avenue residence; Ms. Miller received it on or about November 21, 2011. The next day – according to Federal Express and the records I have attached to this letter – the "recipient" refused delivery of the paycheck. We are working with Federal Express to ascertain a description of the individual who refused delivery.

  Based on this information, EQT fully complied with its obligations under the WVWPCA. Based on the documentary and other evidence in EQT's possession (and now in yours), EQT believes that either Ms. Miller refused delivery of the paycheck or moved and failed to inform EQT of the same. Under either scenario, EQT acted timely and appropriately and believes that a jury will agree. Of course, if Ms. Miller possesses any evidence not discussed in this letter, EQT asks that she provide it and it will be fairly considered.

  Turning to the ADR Agreement that you discussed with Mr. Frankhouser, it requires Ms. Miller to resolve her employment disputes through mandatory and binding arbitration as described in the ADR Program. The consideration provided by EQT was material; in exchange for her agreement to submit her employment disputes to binding arbitration, Ms. Miller was eligible to participate – and did, in fact, participate – in EQT's Short Term Incentive Plan. During our discussions, you indicated your concern that Paragraph 5 of the Alternative Dispute Resolution Program Agreement ("ADR Agreement") rendered the Agreement unconscionable because you believed it "required" Ms. Miller to file a charge with the West Virginia Human Rights Commission ("WVHRC") prior to submitting her claims to arbitration.

As an initial matter, if an employee, in exchange for valid consideration, can agree to submit an employment dispute to binding arbitration in lieu of filing it in state or federal court, she can certainly agree contractually to submit the employment dispute to an administrative process (if one exists) prior to invoking the arbitration process.

In any event, EQT wants to use this opportunity to clarify for Ms. Miller that Paragraph 5 of the ADR Agreement (as well as Section I(A) of the Program) are intended to ensure that an

**SPILMAN THOMAS & BATTLE, PLLC**
ATTORNEYS AT LAW

Maria W. Hughes, Esq.
December 9, 2011
Page 3

employee's claims are ripe, nothing more. That is, where there are administrative filing prerequisites prior instituting a civil action (e.g., Title VII claims), an employee must first exhaust those administrative remedies before seeking to arbitrate those claims under the ADR Program (just as the employee would have to do before initiating a civil action absent the ADR Agreement). So as it relates to Ms. Miller's claims – to the extent they are asserted under the West Virginia Human Rights Act ("WVHRA") and/or any other state employment claim – EQT represents that the ADR Program was not intended to require Ms. Miller to first file her WVHRA claim with the WVHRC prior to invoking the arbitration process. In order to resolve any dispute related to this issue, EQT confirms that it will not assert any failure by Ms. Miller to file a claim with the WVHRC as a defense in the arbitration of this matter.

Finally, I want to point out that the *Ash v. Ravens Metals* case you cited in your e-mail to Mr. Frankhouser which you cite for the proposition that claims under the WVWPCA are not required to be submitted to arbitration pursuant to an arbitration agreement is not on point with the facts in this matter. The court in *Ravens Metals* held that an employee cannot be required to submit WVWPCA claims to arbitration under the grievance and arbitration provisions of a collective bargaining agreement. Obviously Ms. Miller's arbitration agreement is not part of a collective bargaining agreement. Ms. Miller's arbitration agreement is a standalone contract which she entered into with EQT in exchange for EQT's agreement to permit her to participate in the Short Term Incentive Plan. As such, Ms. Miller's alleged WVWPCA claims are subject to the ADR Agreement.

If Ms. Miller has any interest in discussing a reasonable resolution to her concerns prior to initiating arbitration or fighting about whether or not she is required to arbitrate her claims, please let me know and I will open up a dialogue with EQT.

Thank you for your consideration of the matters in this letter. If you have any questions or need any additional information, please do not hesitate to contact me.

Sincerely,

*Kevin L. Carr/kkz*

Kevin L. Carr

**FedEx.**   Ship   Track   Manage   Learn   FedEx Office

Support | Locations | English
Search fedex.com

## Detailed Results

Printer Friendly   Get Link   Help

Enter tracking number

| Detailed Results | Notifications |

Tracking no.: 797763294943   Select time format: 12H | 24H   E-mail notifications

**In transit**
Initiated → Picked up → In transit → Delivered
On FedEx vehicle for delivery
BRIDGEPORT, WV

**Shipment Dates**
Ship date: Nov 22, 2011

**Destination**
STONEWOOD, WV

### Shipment Options   Help

**Hold at FedEx Location**
Not available to receive your shipment? FedEx will hold your shipment at a nearby FedEx location at no extra cost. Some shipments may not be eligible for this service. Read more.

### Shipment Facts   Help

Service type: Standard Envelope
Weight: 0.5 lbs/.2 kg
Purchase order number: 1332332.863200
Department number: DPaulin

### Shipment Travel History   Help

Select time zone: Local Scan Time

All shipment travel activity is displayed in local time for the location

| Date/Time | Activity | Location | Details |
|---|---|---|---|
| Nov 26, 2011 9:12 AM | On FedEx vehicle for delivery | BRIDGEPORT, WV | |
| Nov 25, 2011 10:01 AM | Delivery exception | BRIDGEPORT, WV | Business closed - No delivery attempt |
| Nov 25, 2011 10:01 AM | At local FedEx facility | BRIDGEPORT, WV | |
| Nov 23, 2011 2:11 PM | Delivery exception | BRIDGEPORT, WV | Refused by recipient |
| Nov 23, 2011 9:52 AM | On FedEx vehicle for delivery | BRIDGEPORT, WV | |
| Nov 23, 2011 9:00 AM | At local FedEx facility | BRIDGEPORT, WV | |
| Nov 22, 2011 10:15 PM | At destination sort facility | PITTSBURGH, PA | |
| Nov 22, 2011 9:40 PM | Left FedEx origin facility | PITTSBURGH, PA | |
| Nov 22, 2011 4:33 PM | Picked up | PITTSBURGH, PA | |
| Nov 22, 2011 2:05 PM | Shipment information sent to FedEx | | |

Thinking about taking your e-commerce business to the next level?
Learn from others

**FedEx Advanced Tracking**
The ultimate in tracking solutions.
Watch demo

**FedEx.**   Search fedex.com

**Customer Focus**
New Customer Center
Small Business Center
Service Guide
Customer Support
My FedEx Rewards

**Company Information**
About FedEx
Careers
Investor Relations

**Featured Services**
FedEx SameDay
FedEx Home Delivery
Healthcare Solutions
Online Retail Solutions
Packaging Services
Ancillary Clearance Services

**Other Resources**
Compatible Solutions Program
Developer Resource Center
FedEx Ship Manager Software
FedEx Mobile

**Companies**
FedEx Express
FedEx Ground
FedEx Office
FedEx Freight
FedEx Custom Critical
FedEx Trade Networks
FedEx SupplyChain

**Follow FedEx**

United States - English

© FedEx 1995-2011

Global Home | Site Map | fedex.com Terms of Use | Security

**EXHIBIT A**

http://www.fedex.com/Tracking

11/28/2011



ADDRESS CARD/CHANGE OF ADDRESS

## COMPLETE ALL INFORMATION IN FULL

Please Print Or Type

| EMPLOYEE NAME | PREFERRED NAME |
|---|---|
| Brenda A Miller | |

| COMPANY | EMPLOYEE NUMBER | SOCIAL SECURITY NUMBER (Last 4 Digits Only) |
|---|---|---|
| EQT | 010564 | xxx-xx-4592 |

### RESIDENCE ADDRESS

| NUMBER AND STREET |
|---|
| 406 Maple Ave |

| CITY & STATE | | ZIP CODE |
|---|---|---|
| Stone Wood   WV | | 26301 |

| COUNTY | CITY, BOROUGH, TOWNSHIP | SCHOOL DISTRICT (Mandatory for all employees) |
|---|---|---|
| Harrison | | |

| HOME TELEPHONE NUMBER |
|---|
| 304-566-7041 |

[X] CHANGE RESIDENCE ADDRESS       EFFECTIVE DATE OF ADDRESS  Immediately

SIGNATURE OF EMPLOYEE
SIGNATURE _Brenda A Miller_       DATE  June 14, 2011

---

PENNSYLVANIA EMPLOYEES ONLY—If you want local wage tax deducted, complete this section:

[ ] I AUTHORIZE EQT CORPORATION TO DEDUCT LOCAL WAGE TAX FOR THE MUNICIPALITY SHOWN BELOW (You also must complete section below. Note: You must complete two forms if there are two tax collectors for your local tax.)

### MUNICIPALITY ADDRESS

| MUNICIPALITY NAME | TAX COLLECTOR |
|---|---|
| | |

| NUMBER AND STREET |
|---|
| |

| CITY & STATE | ZIP CODE |
|---|---|
| | |

| TELEPHONE NUMBER |
|---|
| |

### PAYROLL DEPARTMENT USE ONLY

| STATE | COUNTY | LOCAL TAX | | | |
|---|---|---|---|---|---|
| | | | | | |

RETURN THE **SIGNED AND COMPLETED** FORM TO:
Payroll Department—25th Floor
EQT Corporation
EQT Plaza
625 Liberty Avenue
Pittsburgh, PA 15222



EXHIBIT B

10/12/2010

### Paulin, Deborah A.

**From:** Miller, Brenda A.
**Sent:** Monday, October 31, 2011 10:09 AM
**To:** Paulin, Deborah A.
**Subject:** RE: Exemptions

Got to tell you that I have been telling people how wonderful you are and about our credit union. I have been handing out your number and theirs. I watch the look of thankfulness pass over their face, just to know that someone is there helps. You are great and I want to thank you for all that you have done.

---

**From:** Paulin, Deborah A.
**Sent:** Monday, October 31, 2011 10:05 AM
**To:** Miller, Brenda A.
**Subject:** RE: Exemptions

Well congrats and keep me posted. Make sure they send a release when they receive the money.

---

**From:** Miller, Brenda A.
**Sent:** Monday, October 31, 2011 10:05 AM
**To:** Paulin, Deborah A.
**Subject:** RE: Exemptions

Hey girl, got my loan, I will call them today and find out how I get them the money. I think it will have to be by certified check, they are such happy people!

---

**From:** Paulin, Deborah A.
**Sent:** Thursday, October 20, 2011 3:21 PM
**To:** Miller, Brenda A.
**Subject:** RE: Exemptions

You go girl I have already received the letter. It is released for 1 pay period.

---

**From:** Miller, Brenda A.
**Sent:** Thursday, October 20, 2011 3:19 PM
**To:** Paulin, Deborah A.
**Subject:** RE: Exemptions

Thanks, I called them and they will not call off the dogs which is fine. I explained that I was going for a loan and they thought that was great! Of course they did! He said that he will fax you a letter holding them off for a week. Let me know

---

**From:** Paulin, Deborah A.
**Sent:** Thursday, October 20, 2011 1:49 PM
**To:** Miller, Brenda A.
**Subject:** RE: Exemptions

Well all I can say is good luck on your mission and you are most welcome. You know in the future you can feel free to contact me anytime.

Deb

1


EXHIBIT C

-----Original Message-----
From: Maria Hughes [mailto:maria@wvemploymentrights.com]
Sent: Friday, December 09, 2011 11:00 AM
To: Kevin L. Carr
Subject: Brenda Miller

Kevin,

Thanks for your letter earlier today.  I am traveling to NYC for the weekend so I am unable to provide any substantive response today.  What I would point out is 2 things: (1). The issue on the WPCA claim is clearly a question of fact; and (2) The arbitration agreement is what it is (and said what it says) at the time Ms Miller signed it.  Neither she nor other WV employees were provided the explanation EQT now offers after the fact.  Thus, a dec action is appropriate as we believe the agreement is unconscionable for several reasons.  At this time, I am requesting that EQT immediately effect a litigation hold to preserve all evidence of any kind -including Electronically Stored Info on Ms Millers computer and each computer of every person at her office location.  Internet usage of all employees at that location and also for Chuck Heilman will be in issue. (for aug 2010 to present).  Also, all Emails of any kind involving Ms Miller.  I will follow up w a formal lit hold letter but wanted to make sure EQT understands its obligations.  I do intend to conduct discovery on all efforts it makes to place the lit hold into effect.  Thanks.

Sent from my iPhone

---

This email has been scanned for all viruses by the MessageLabs Email Security System.