IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EQT CORPORATION,
a Pennsylvania corporation,

      Plaintiff,

v.                                          Civil Action No. 1:11CV197
                                                           (STAMP)
BRENDA A. MILLER,

      Defendant.


**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND DENYING DEFENDANT'S MOTION TO STRIKE
PLAINTIFF'S MOTION FOR JUDGMENT ON THE
PLEADINGS OR, IN THE ALTERNATIVE,
CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

I.  Background

The defendant, Brenda A. Miller ("Miller"), began employment with the plaintiff, EQT Corporation ("EQT"), on or about September 7, 2010 in the position of Landman II.  Shortly before commencing employment with EQT, Miller signed a written agreement entitled "Alternative Dispute Resolution Program Agreement" ("ADR Agreement") which purported to require Miller to submit certain disputes to EQT's Alternative Dispute Resolution Program ("ADR Program"), an arbitration program created by EQT.  Miller was terminated from her employment with EQT on or about November 21, 2011.  Following her termination Miller, by counsel, sent a number of letters to EQT threatening to file suit against EQT for sexual harassment, discriminatory and retaliatory discharge, and violations of the West Virginia Wage Payment and Collection Act

("WVWPCA").   Through a number of these communications, Miller indicated to EQT that she did not believe that the ADR Agreement was enforceable against her on the claims that she intended to bring.

Following these communications, EQT filed this action in this Court, seeking a declaration of the rights and responsibilities of these parties under the ADR Agreement and the ADR Program.   EQT asserts justiciability of this action due to the Miller's specifically described intention to file suit against EQT, as well as her specifically described intention to file suit in a court of law rather than within the ADR Program.   The complaint contains two counts, which each pray for a declaration of rights on a particular issue.   Count One asks for declaratory judgment as to the enforceability of the ADR Program against all of the claims that Miller has threatened to bring against EQT.   Count Two specifically seeks a declaration of the arbitrability of Miller's threatened claims under the WVWPCA.   Shortly after EQT filed this complaint, Miller filed an action in the Circuit Court of Kanawha County asserting sexual harassment against three individual defendants, two employees of EQT, and one a non-employee contractor with whom Miller worked while employed by EQT.   EQT is not a party to that action.

EQT then filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), asserting that based upon the pleadings alone, the ADR Agreement is valid and enforceable

2

against all of the claims which Miller threatened to bring against EQT, and asking for a declaratory judgment stating the same. EQT's motion for judgment on the pleadings also asks this Court to declare the ADR Agreement enforceable against the claims which Miller has brought against EQT's employees in state court. In response to this motion, defendant Miller filed a motion to strike EQT's motion for judgment on the pleadings, and in the alternative, a cross-motion for judgment on the pleadings, arguing that both the ADR Agreement and the ADR Program are unenforceable as a matter of law. Both of these motions are fully briefed and ripe for determination by this Court. For the reasons that follow, this Court finds that the ADR Agreement is valid and enforceable against all claims which Miller threatened to bring against EQT, but declines to determine whether the Agreement is enforceable with regard to claims not brought before this Court against parties not present before this Court.

## II. <u>Applicable Law</u>

A motion for judgment on the pleadings is permitted under Federal Rule of Civil Procedure 12(c). Such a motion is intended as an avenue by which parties may dispose of a case on the basis of the underlying substantive merit of the parties' claims as they are revealed in the formal pleadings "after pleadings are closed, but early enough not to delay trial." Fed. R. Civ. P. 12(c); 5C Wright & Miller, <u>Federal Practice and Procedure</u> Civil 3d § 1367 (2007). When considering a motion for judgment on the pleadings pursuant to

3

Rule 12(c), a court should apply the same standard as when considering a motion to dismiss pursuant to Rule 12(b)(6).  See Burbach Broadcasting Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002).

Hence, in assessing a motion for judgment on the pleadings, a court must accept as true the factual allegations contained in the complaint.  Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990).  Further, as a general matter, no information outside of the pleadings may be considered.  See Fed. R. Civ. P. 12(d).  However, documents "integral to and explicitly relied on in the complaint" may be considered.[1]  Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

### III.  Discussion

Both parties agree that the ADR Agreement is an arbitration agreement subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and is subject to review for enforceability thereunder.  ECF No. 11 *16; ECF No. 13 *8.  The FAA embodies the generally liberal federal policy in favor of enforcement of contractual arbitration clauses.  Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) ("Adkins II").  When determining whether an issue is arbitrable pursuant to a contractual provision,

---

[1]As such, this Court has relied only upon the complaint and answer, the parties' briefing of the cross-motions, the ADR Agreement and the ADR Program, and evidence of correspondence between EQT and counsel for Miller wherein Miller threatened to file suit against EQT and indicated that she did not believe the ADR Program and ADR Agreement to be enforceable.  No affidavits or other documents filed as exhibits to the motions or the briefing thereof have been considered.

4

courts are required to "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" <u>Hill v. PeopleSoft USA, Inc.</u>, 412 F.3d 540, 543 (4th Cir. 2005) (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983)). On the other hand, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960). Under the FAA, analysis of a claim seeking to enforce an arbitration agreement requires that the trial court determine both "(1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred . . . fall within the substantive scope of the arbitration agreement." <u>State ex rel. TD Ameritrade, Inc. v. Kaufman</u>, 692 S.E.2d 293, syl. pt. 2 (W. Va. 2010). When the FAA applies, federal law determines the arbitrability of issues. However, the enforceability of an arbitration agreement; the issue of whether a valid, enforceable agreement to arbitrate exists, "is a question of state law governing contract formation." <u>Adkins II</u>, 303 F.3d at 501 (citing <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995)).

In order to enforce an arbitration agreement under the FAA, the enforcing party must "demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) failure,

neglect, or refusal of the [opposing party] to arbitrate the dispute." <u>Id.</u> at 500-01 (citing <u>Whiteside v. Teltech Corp.</u>, 940 F.2d 99, 102 (4th Cir. 1991)).

EQT seeks a declaration both that the ADR Program and ADR Agreement are enforceable, and also that all of the claims that Miller has threatened to bring against EQT are covered by the ADR Program and ADR Agreement, and are subject to arbitration. Specifically, EQT seeks a determination that the WVWPCA claim which Miller threatened to bring is subject to arbitration under the Agreement and the Program.   This Court will first address the arbitrability of Miller's threatened claims under the ADR Agreement and the ADR Program, and then will turn to the general enforceability of the ADR Agreement and the ADR Program against those claims.

A.   <u>All Claims Threatened Against EQT are Arbitrable Under the ADR Program and ADR Agreement</u>

This Court initially finds that EQT has satisfied the <u>Adkins</u> test in order enforce the ADR Agreement and ADR Program pursuant to the FAA.   Miller has not contested this issue.   EQT has successfully demonstrated the first element, the existence of a dispute between the parties here, through the production of correspondence between counsel for Miller and EQT.   This correspondence indicates that Miller intended to file suit against EQT based upon clearly delineated causes of action resulting from her termination, and that she believed the ADR Agreement and the ADR Program to be unenforceable.   Further, the third element is

satisfied because the parties to the Agreement are citizens of two different states and the work performed under the relevant employment relationship involved a product which is largely commercially transported and sold in interstate commerce. See Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 264, 274 (1995) (The FAA's reach with regard to interstate commerce is quite broad and is as far as that of Congress's Commerce Clause power). Element four is also easily satisfied because, as indicated in the correspondence between EQT and counsel for Miller, Miller has demonstrated a refusal to arbitrate based upon her belief that the arbitration clause is unenforceable.

With regard to element two, that the clause purports to cover the dispute, it is clear that all claims which Miller has threatened to bring against EQT are covered by the ADR Program and the ADR Agreement.  The terms of the ADR Agreement indicate that the Agreement covers "any claim that is related in any way to an individual's employment with EQT which is recognized in a federal or state court where the Employee works."  ECF No. 3 Ex. 3 *2. Clearly, federal and state employment discrimination claims, as well as claims under the WVWPCA relating to the termination of Miller's employment with EQT fall under this definition of covered claims.  Accordingly, EQT has satisfied the elements required to enforce this the ADR Agreement and ADR Program under the FAA.

However, Miller indicated in prior correspondence with EQT, that any claim under the WVWPCA is not arbitrable because the WVWPCA "prohibits modification of the right to bring legal action

by private agreement, such as an arbitration agreement." ECF No. 3 Ex. 1 *2.   West Virginia Code § 21-5-10 provides that "no provision of [the WVWPCA] may in any way be contravened or set aside by private agreement."

EQT argues that an agreement to arbitrate claims under the WVWPCA does not "contravene[] or set aside" any provisions of the Act, because no substantive rights created under the WVWPCA are altered by requiring a specific forum for such claims.   However, this Court finds it unnecessary to reach a determination as to that issue because § 21-5-10 is directly in conflict with the FAA, and is thus preempted inasmuch as it may disallow the enforcement of arbitration agreements covered by the FAA.

As stated above, the FAA governs determinations of arbitrability of claims when an arbitration clause subject to the FAA is asserted as applicable.   However, "the FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." Volt Info. Scis. v. Bd. of Trs., 489 U.S. 468, 477 (1989).   Accordingly, state law provisions affecting arbitration which do not directly conflict with the FAA are not preempted thereby.   However, the Supremacy Clause of the United States Constitution nonetheless mandates that, when a provision of state law directly conflicts with or "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives'" of a federal statute, state law is preempted. Id. (citing Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).

8

The United States Supreme Court has held that "[i]n enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolved by arbitration." <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 10 (1984). Accordingly, state law cannot be applied in such a way to invalidate otherwise enforceable arbitration agreements. <u>See Allied-Bruce Terminix Cos.</u>, 513 U.S. at 271-72 (explaining <u>Southland Corp.</u> decision). Application of West Virginia Code § 21-5-10 in the way asserted by Miller would do just that, and thus it is preempted by the FAA.

B.   <u>The ADR Agreement is Enforceable and is Not Unconscionable</u>

Miller asserts that, even if the claims which she has threatened to bring against EQT are all arbitrable under the ADR Agreement and ADR Program, the ADR Agreement and the ADR Program are unenforceable under West Virginia law as both procedurally and substantively unconscionable. In West Virginia, there is no specific delineation between these two forms of unconscionability, and in order for an arbitration clause to be void as unconscionable, the court must find unacceptable a combination of "the relative positions of the parties, the adequacy of the bargaining position," lack of "meaningful alternatives" in the formation of the challenged clause, and "the existence of unfair terms." <u>Art's Flower Shop v. Chesapeake & Potomac Tel. Co.</u>, 186 W. Va. 613, syl. pt. 4 (1992); <u>Arnold v. United Cos. Lending Corp.</u>, 350 F.2d 445, 449 (D.C. Cir., 1965). Finding a contract

9

unenforceable based upon unconscionability requires findings of some level of both procedural and substantive unconscionability and is based upon a finding of "'inequities, improprieties, or unfairness'" in both the procedure of the creation of the contract, and in the contents of the contract itself. <u>Brown v. Genesis Healthcare Corp.</u>, 729 S.E.2d 217, 2012 W. Va. LEXIS 311, Nos. 35494, 35546, 35635 *26-29 (W. Va. June 13, 2012) ("<u>Brown II</u>") (quoting <u>Brown v. Genesis Healthcare Corp.</u>, 724 S.E.2d 250, 261 syl. pt. 17 (W. Va., 2011) (vacated on other grounds by <u>Marmet Health Care Ctr., Inc. v. Brown</u>, 132 S.Ct. 1201 (2012)) ("<u>Brown I</u>")).

<u>1.   Procedural Unconscionability</u>

In support of her claim of procedural unconscionability, Miller asserts that no one at EQT explained to her that she had the opportunity to consult with counsel before signing the ADR Agreement, that no one suggested that she had the ability to negotiate any changes in the terms of the ADR Agreement or the ADR Program, and that she believed the ADR Agreement to be mandatory and a contract of adhesion that was take-it-or-leave-it in nature. She also claims that the negotiating positions of the parties were highly unequal because EQT is a large, sophisticated corporation and Miller is an individual who does not have a college degree. Finally, Miller asserts that the Agreement contains complex legal terms which she did not understand.

However, Miller has failed to show anything that constitutes procedural unconscionability. Initially, it is noted that, even if

10

the ADR Agreement and the ADR Program were contracts of adhesion, and Miller did not have any ability to negotiate as to their terms, the agreements are not automatically rendered unconscionable. State ex rel. Clites v. Clawges, 685 S.E.2d 693, 700 (W. Va. 2009). Further, despite Miller's assertion that she was required to sign the Agreement "as a condition of her employment" and that the Agreement was one of adhesion, there is no indication in either the Agreement or the Program that participation is a mandatory condition of employment at EQT or that the agreements were "take it or leave it." It is clear that Miller did not ask questions about the Agreement,[2] but rather just signed it. This Court cannot find a "lack of meaningful choice" or "unfairness in the bargaining process" based upon Miller's uncorroborated understandings or beliefs about the Agreement when she took no steps to confirm those understandings. Brown II, 2012 W. Va. LEXIS 311 at *26-28.

Additionally, while Miller asserts that "no one explained to her that she should get a lawyer," and that "[n]o one suggested that she could make any changes to [the ADR Agreement or the ADR Program] or that the terms were negotiable," such explanations are not required by West Virginia law in order to make a negotiating process fair. Adkins v. Labor Ready, Inc., 185 F. Supp. 2d 628, 638 (S.D. W. Va. 2001), aff'd at 303 F.3d 496 (4th Cir. 2002) ("Adkins I") ("There is no requirement that the more sophisticated

---

[2]As noted below, the provisions of the ADR Program even suggest the opposite; that the Program terms were indeed negotiable.

11

party to a contract offer the less sophisticated party an oral explanation of the terms of the contract"). Further, with regard to Miller's opportunity to obtain counsel before signing the ADR Agreement and her ability to negotiate the terms of the Agreement, the Agreement and the Program make clear that both of these opportunities were available to Miller. Paragraph 4 of the Agreement states in clear language that "I have been provided with an opportunity to seek legal advice before signing this ADR Program Agreement." Similarly, in the Program explanation, the final claims specifically noted as exempted from the Program are, "[c]laims specifically excluded from the ADR Program by written agreement between EQT and an Employee." This clearly should have placed Miller on notice that she could negotiate the terms of the ADR Program with EQT. While Miller claims to not understand portions of the ADR Agreement and/or the ADR Program, this Court cannot find credible any assertion that Miller did not understand these plain statements.

Based upon the above clear notification that employees participating in the ADR Program had an opportunity to consult with an attorney, Miller's assertion that she did not understand the terms of the contract also cannot serve as a basis for a finding of procedural unconscionability. While Miller did not utilize the opportunity, she was clearly offered an opportunity to consult with an attorney if she did not understand the Agreement, and as above described, EQT was under no obligation to explain the terms to her.

Finally, while it is true that EQT was the drafter of the ADR Agreement and the ADR Program, and that EQT is a large company, while Miller is an individual without a college degree,[3] there is no indication that the parties' bargaining positions were grossly imbalanced, or even any indication that they were uneven at all. See Brown I, 724 S.E.2d at 261, syl. pt. 12 (all facts and circumstances of a case must be taken into account in determining unconscionability).    Both parties to this Agreement wanted something from the other.  Miller desired to be employed by EQT. However, EQT also clearly desired to employ Miller, as is evidenced by the offer of employment which they extended to her.  There is no evidence that EQT forced Miller to sign the Agreement as a condition of her employment, aside from Miller's uncorroborated "understanding" of the same.  Further, there is no evidence that Miller even challenged, questioned, or attempted to negotiate the ADR Agreement and/or the ADR Program that was presented to her. This Court cannot find that the parties' bargaining positions were unequal based simply upon the comparative sophistication of the parties and Miller's conclusory assertions.   Accordingly, this Court does not find that the ADR Agreement and ADR Program are procedurally unconscionable.

As this Court can find nothing to support procedural unconsionability, under West Virginia precedent, the ADR Agreement and ADR Program cannot be unenforceable based upon

---

[3]Although Miller admits that she did attend some college.

13

unconscionability.  <u>See</u> <u>id.</u> at 262, syl. pt. 20 ("A contract term is unenforceable if it is <u>both</u> procedurally and substantively unconscionable.") (emphasis added).  However, in the interest of thorough analysis of the arguments presented by the parties, this Court will nonetheless address Miller's assertions of substantive unconscionability.

    2.  <u>Substantive Unconscionability</u>

Miller raises three bases upon which she believes the ADR Agreement and ADR Program to be substantively unconscionable. First, she argues that the ADR Program does not require EQT to mediate its claims against its employees, and thus does not create a mutuality of obligations.  Second, she asserts that the ADR Agreement and the ADR Program allow EQT to alter or amend the terms of the Program and/or Agreement at will.  Finally, Miller claims that the ADR Agreement and ADR Program are unconscionable because they require her to exhaust all available administrative remedies before filing a claim in arbitration.

    i.  <u>Mutuality of Obligation</u>

Miller's first assertion of substantive unconscionability is that of a lack of mutuality of obligation to arbitrate within the ADR Agreement and ADR Program.  To be sure, non-mutuality of obligation mandates a finding of substantive unconscionability as, "'in assessing substantive unconscionability, the paramount consideration is mutuality.'"  <u>State ex rel. Richmond Am. Homes</u>, 717 S.E.2d, 909, 921 (W. Va. 2011) (quoting <u>Abramson v. Juniper Networks, Inc.</u>, 115 Cal. App. 4th 638, 664 (2004)).

However, this Court finds that the language of the ADR Agreement and the ADR Program necessitates the conclusion that the Agreement equally binds EQT and participating employees to submit all covered claims to the ADR Program.  Miller points to a number of passages from the ADR Program which she claims indicate that the Program binds only the employee.  First, the defined "SCOPE" of the Program provides:  "SCOPE: All EQT Employees who are subject to an ADR Program Agreement . . . ."  ECF No. 3 Ex. 3 *1.  Next, she notes that the description of the process for invoking the process provides that, "to invoke the ADR Program, an Employee must . . .[,]" but makes no mention of what the Employer must do to invoke the Program.  Id.  In response, EQT argues that it is indeed bound by the ADR Agreement.   It points out that neither the Agreement nor the Program specifically exempt EQT from an obligation to submit claims to the ADR Program, and asserts that the language of the Program which is quoted by Miller focuses on the obligations of the employee only because the Agreement and Program explanation were intended to inform employees of the rights which they were giving up, and to educate employees as to how they could utilize the Program.  EQT argues that this language does not indicate that EQT is exempt from the Program.  It asserts that the obligation to submit claims to the ADR Program is based upon the type of claim filed, not the party filing that claim.  This Court agrees.

First, while the scope section of the ADR Program speaks only to "EQT Employees," and doesn't mention EQT itself, the section

goes on to note that the Program provides "for mandatory arbitration of employment related claims," generally. Id. The section does not restrict mandatory arbitration to claims by EQT Employees, nor does it exempt claims against EQT Employees, but rather generally mandates "arbitration of employment related claims." Id. Accordingly, when the scope section is read in its entirety, rather than by focusing upon the introductory clause alone, it is clear that the Scope section of the Program mandates arbitration of claims in any way involving "EQT Employees who are subject to an ADR Program Agreement," whether that employee is involved in the dispute as the claimant or the recipient of a claim in such a disagreement. See Trumball Invs. Ltd. I v. Wachovia Bank, N.A., 436 F.3d 443, 448 (4th Cir. 2006) (Courts consider contracts as a whole and do not place emphasis on "isolated terms.") (internal quotations omitted).

Further, this Court notes that the "Policy Details" section of the ADR Program, which outlines which claims are covered by the Program and which are exempt, broadly defines the "employment disputes" which are subject to the Program as "any claim that is related in any way to an individual's employment with EQT which is recognized in a federal or state court where the Employee works." ECF No. 3 Ex. 3 *1. This broad definition makes no mention of the party bringing the claim, but rather sweeps all "employment disputes" into the Program.

Finally, and most significantly to this Court's conclusion that mutuality of obligation exists, as EQT also notes, the Program

16

specifically excludes from the obligation to arbitrate "[c]laims by the Company for injunctive relief . . . ." Id.  If this Court were to read the ADR Agreement and the ADR Program to not obligate EQT to submit any employment disputes to arbitration, this specific exemption of claims by EQT for injunctive relief would be rendered wholly meaningless, because the ADR Program generally would not require such claims to be submitted to arbitration.  It is a longstanding principle of contract interpretation that any provision of an agreement which is knowingly incorporated therein must be given meaning.  Trumball Invs. Ltd. I, 436 F.3d at 447. Accordingly, the interpretation encouraged by Miller cannot be correct, and this Court concludes that the Program obligates EQT to arbitrate claims against participating employees.[4]

> ii.  Unilateral Alteration of Program/Agreement

Miller's second assertion of substantive unconscionability claims that the ADR Program or the ADR Agreement, or both, may be unilaterally altered by EQT, and that retention of this ability to alter an agreement has been found by other courts to render an agreement unenforceable.  Miller supports her claim that the ADR

---

[4]Throughout the briefing of these cross-motions for judgment on the pleadings, there is much discussion about the Short Term Incentive Plan or "STIP" program to which Miller was allegedly given access as consideration for participating in the ADR Program. Miller claims that this consideration is illusory because she has never seen this plan, does not know what it is, and believes the plan to be unilaterally revocable at the option of EQT.  However, as this Court finds that EQT is equally bound to arbitrate under the ADR Program, these arguments need not be addressed.  With regard to mutually obligating arbitration agreements, legally sufficient consideration exists simply by virtue of the mutually binding obligation to arbitrate.  See Adkins II, 303 F.3d at 501.

Agreement/ADR Program may be unilaterally altered by citing to notes at the top of the ADR Program which indicate that the Program is Policy 1.8, and that it was formerly Policy 1.16.  However, as EQT asserts, Miller can point to no provision of the Agreement nor of the Program through which EQT retains the right to alter the Agreement in any way.

Additionally, Miller cannot point to any way that Policy 1.16 is different than Policy 1.8.  It is possible that the changing of the policy numbers reflected nothing more than reorganizing or renumbering of EQT Policies.  As such, this Court finds no basis to find that EQT may unilaterally alter the ADR Program or ADR Agreement, or both, and cannot determine that the Program or the Agreement are unconscionable on this basis.

### iii. Exhaustion of Administrative Remedies

Finally, Miller asserts that the ADR Program requires that she "exhaust all available administrative remedies" before filing a claim for arbitration.  She claims that, specifically with regard to claims under the West Virginia Human Rights Act ("WVHRA"), which do not have an exhaustion requirement as a prerequisite to filing an action in court, this additional requirement is a deterrent to filing a claim, and is thus unconscionable.  See State ex. rel. Dunlap v. Berger, 567 S.E.2d 265, 266, syl. pt. 4 (W. Va. 2002). She further maintains that, specifically with regard to WVHRA claims, the extra exhaustion requirement contained in the ADR Program alters her substantive rights.  First, she maintains that the WVHRA has a one-year statute of limitations for all

18

administrative claims, but permits direct filing of a claim in court for two years. Secondly, she says that because some compensatory damages and all punitive damages are unavailable for claims filed administratively under the WVHRA, requiring Miller to file an administrative claim with the commission would cause her to waive her right to such damages, as the ADR Program forecloses the filing of a claim after "full and final disposition" of a claim through administrative processes.

EQT argues that this provision of the ADR Program requires exhaustion of administrative remedies only in situations where such exhaustion is a prerequisite to filing a civil suit in court, for example, as for a claim under Title VII of the Civil Rights Act of 1964. EQT also maintains that, even if the provision is interpreted to require exhaustion of all administrative remedies, even when such exhaustion is not required as a prerequisite to filing a civil suit, the provision is not unconscionable, as requiring exhaustion of administrative remedies is not so burdensome as to render the ADR Program unenforceable. EQT argues that Miller's substantive rights are not compromised by any requirement to exhaust all available administrative remedies, because she could maintain her right to all compensatory and punitive damages available under the WVHRA by choosing to move her claim to the ADR Program before final disposition of her claim, after the commission completes its initial review and issues a finding regarding probable cause.

This Court finds that the exhaustion requirement contained in the ADR Program does not render the Program unconscionable. Initially, it is noted that no conclusion must be reached with regard to whether the provision requires Miller to exhaust all available administrative remedies at all times, or only when required by law to do so, because even if the provision is read as Miller contends, the provision is not unconscionable.   The West Virginia Supreme Court of Appeals has held that:

> Provisions in a contract of adhesion that if applied would impose <u>unreasonably</u> burdensome costs upon or would have a <u>substantial</u> deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public, are unconscionable . . . .

<u>Dunlap</u>, 567 S.E.2d at 266, syl. pt. 4 (in part) (emphasis added). Miller asserts that the exhaustion requirement in the ADR Program places such unreasonable burden and acts as a substantial deterrent to filing a claim.   This Court disagrees.

The relevant provision only requires exhaustion of administrative remedies where such remedies exist.   It does not create an administrative system which stands outside of and in the way of the legal rights created by state or federal law, but rather asks the employee to simply utilize the administrative avenues for redress that have already been created within the law for that employee's particular claim.   Further, there has been no argument advanced that utilization of such administrative avenues would be overly costly for an employee.   As stated in <u>Dunlap</u>, unconscionably

20

burdensome provisions stand in the way of obtaining relief "afforded by or aris[ing] under state law." Id. The exhaustion provision in the ADR Program only asks participating employees to utilize avenues for relief which are "afforded by" state law; it does not stand in the way of such utilization. Id. To find unreasonably burdensome the utilization of administrative relief already created by state or federal law for the purpose redress of the very legal claim asserted by an employee would be improper. This Court cannot make such a finding.

Further, the exhaustion requirement does not result in a waiver of any substantive rights. As an initial matter, Miller's assertion that she may lose her ability to vindicate her rights under the WVHRA entirely as a result of the exhaustion requirement is without merit. Miller claims that, because the WVHRA requires that all administrative claims be filed within one year of the alleged wrongdoing, while it allows two years for the filing of a civil claim in court, should an employee miss the one-year statute of limitations, but nonetheless bring their claim within the two-year limit, the employee will be foreclosed from bringing a claim in arbitration because she will be unable to exhaust her administrative remedies under the WVHRA. This is not correct. The exhaustion requirement of the ADR Program requires that all employees seeking to bring a claim exhaust all "administrative remedies available for that claim." Under the statutory scheme of the WVHRA, if an employee sought to bring a claim under that WVHRA more than one year, but less than two years after the alleged

21

wrongdoing, no administrative remedies would be available to her. Accordingly, pursuant to the plain language of the ADR Program's exhaustion provision, the employee would be free to directly file a claim in arbitration.

Neither does this Court believe that the exhaustion requirement results in a forfeiture of any of Miller's rights to punitive and/or compensatory damages under the WVHRA. As EQT points out, an employee may choose to withdraw her claim from the commission, or move it to the ADR Program at the point that the commission issues a finding regarding probable cause. Transferring a claim to the ADR Program at this point satisfies the exhaustion requirement, and also permits the employee to file a claim in arbitration wherein all remedies available under the WVHRA would be available to the employee.

Miller claims that this option is insufficient to make the provision conscionable because, while Miller has obtained an attorney, without an attorney throughout the process, an employee would be unlikely to recognize the availability of the option to withdraw her claim from the commission. Further, Miller asserts, it is unlikely that any employees, without the aid of an attorney, would even recognize that they were forfeiting rights to certain damages by continuing a claim before the commission. While this may be true, this possibility exists not only in the administrative claims process, but in arbitration and litigation as well. The general process of litigating any claim in any forum is a complex one sometimes ripe with prospects for unrepresented litigants to

unwittingly forfeit rights due to unfamiliarity with the system. Simply because the process mandated by the ADR Program is such that a litigant may be wise to hire an attorney to safeguard against forfeiting her legal rights does not make the process unconscionable.  In accordance with the foregoing, this Court finds that the ADR Program and the ADR Agreement are valid and enforceable, and that all claims that Miller has threatened to bring against EQT are covered by that Agreement and Program and are arbitrable thereunder.

C.   This Court Cannot Determine the Rights and Obligations of Parties and Claims Not Properly Before It

EQT also asks this Court for a determination of whether the ADR Agreement and ADR Program require Miller to submit claims against individual employees and/or agents of EQT to arbitration. This request arises from claims brought by Miller against three individuals, two of whom are EQT employees, in the Circuit Court of Kanawha County, West Virginia, pursuant to the WVHRA, W. Va. Code § 5-11-9(7), and West Virginia common law for sexual harassment and retaliation during her employment with EQT.  EQT is not a party to Miller's state court action against those individuals, and the individuals involved as defendants in that case have not been made parties to this case.  EQT claims that this Court may properly determine the rights of those individuals under the ADR Agreement because EQT's complaint asked this Court to determine rights and responsibilities under the ADR Agreement and the ADR Program

23

generally, and because two of those individuals have been sued in their capacity as agents of EQT.

However, Miller has chosen not to make EQT a party to the state court action, and no party to this case has chosen to bring the parties to that case into this action.  This Court is not in the position to decide rights and responsibilities of parties not before it with regard to claims not before it.  This action was filed by EQT against Miller based upon specific claims that Miller threatened to bring against EQT.  The rights of those parties with regard to those claims are the only issues that have been properly raised before this Court.  Any right of the parties to Miller's state court case to compel arbitration in that matter is properly decided by the court to which that case has been presented, and for this Court to make the requested determination would be a strong affront to federalism.  Accordingly, this Court declines to determine whether the ADR Agreement is enforceable with regard to the claims and parties of Miller's state court action.

## IV.  Conclusion

For the reasons stated above, EQT Corporation's motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART. EQT Corporation's request for a declaration that the ADR Agreement and the ADR Program are valid and enforceable with regard to EQT Corporation and defendant Brenda A. Miller is GRANTED.  EQT Corporation's request for a declaration that the claims threatened by defendant Brenda A. Miller under the WVWPCA are arbitrable is GRANTED.  However, EQT Corporation's request for a declaration

24

regarding the ADR Agreement and ADR Program's applicability to claims by defendant Brenda A. Miller against individual employees and/or agents of EQT Corporation is DENIED because this Court declines to make a determination as to the rights of parties not before it.   The defendant Brenda A. Miller's motion to strike plaintiff's motion for judgment on the pleadings or, in the alternative, cross-motion for judgment on the pleadings is DENIED. It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein.   Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    September 5, 2012


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE